**UNITED STATES of America**

v.

**Charles McKNIGHT, Thomas McKnight, and Michael Grayson.**

**Crim. No. 77–230.**

United States District Court, E. D. Pennsylvania.

Oct. 18, 1977.

David W. Marston, U. S. Atty., Thomas J. McBride, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

D. T. Spagnoletti, Philadelphia, Pa., for C. McKnight.

Douglas H. Riblet, Defender Assn. of Philadelphia, Philadelphia, Pa., for T. McKnight.

Roger D. Morris, Swarthmore, Pa., for Grayson.

## MEMORANDUM OPINION

BECHTLE, District Judge.

Defendants Charles McKnight ("Charles"), Thomas McKnight ("Thomas") and Michael Grayson ("Grayson") were charged in a one-count indictment with conspiracy to manufacture methamphetamine, a schedule II nonnarcotic controlled substance, in violation of 21 U.S.C. § 846.[1] On June 10, 1977, Thomas pleaded guilty to Count I of the indictment. Charles and Grayson were tried by a jury before this Court and on July 20, 1977, were found guilty as charged.

■ Presently before the Court are motions by Charles and Grayson for judgment of acquittal, for a new trial and in arrest of judgment, pursuant to Rules 29(c), 33 and 34, respectively, of the Federal Rules of Criminal Procedure. Only the arguments raised by Charles and Grayson in support of their motions for judgment of acquittal require discussion.[2] For the reasons stated below, we will deny all of defendants' motions.

Charles and Grayson argue in support of their Rule 29(c) motions[3] that the Government failed to introduce sufficient evidence at trial by which the jury could have concluded beyond a reasonable doubt: (1) that defendants conspired to manufacture a

---

1. 21 U.S.C. § 846 states, in pertinent part:

    Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both . . . .

    The offense defined in the subchapter which the indictment charges Thomas, Charles and Grayson with having conspired to violate is 21 U.S.C. § 841(a)(1), which states, in pertinent part:

    (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

    (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

    . . .

2. The Court notes that, while Charles and Grayson raise many arguments in support of their respective motions, several of these arguments are unclearly or improperly raised. *See United States v. Miah*, 433 F.Supp. 259, 262–265 (E.D.Pa.1977). Furthermore, the Court finds that many of the issues raised do not merit discussion. The Court's work is made more difficult by the fact that only Grayson filed a memorandum of law in support of his motions, only Grayson's counsel appeared for the hearing held September 15, 1977, on the post-trial motions and neither defendant ordered the notes of testimony transcribed.

    In fairness to both defendants, particularly Charles, we will construe those arguments stressed in Grayson's memorandum of law as properly raised in support of his Rule 29(c) motion for judgment of acquittal. We will also treat Grayson's arguments in support of his motion for judgment of acquittal as having also been briefed and argued on behalf of Charles.

3. Both Charles and Grayson raised substantially the same arguments in support of their motions for judgment of acquittal, pursuant to Fed.R.Crim.P. 29(a), at the close of the Government's case and again at the close of all the evidence.

chemical substance known as methamphetamine; or (2) that defendants possessed the requisite intent to support a violation of 21 U.S.C. § 846.

A brief summary of the evidence produced at trial will be helpful to an understanding of this Opinion. For a substantial period of time prior to the occurrence of events involved in this case, federal agents of the Bureau of Alcohol, Tobacco and Firearms and the Drug Enforcement Administration had been conducting a covert investigation of alleged illegal drug and firearms activity in Delaware County, Pennsylvania. Among the suspects being investigated was Thomas McKnight, Charles McKnight's brother. The federal agents testified at trial that, shortly before the termination of this covert operation, they received information from Thomas that Charles was involved in the illegal manufacture of controlled substances. On or about March 30, 1977, a meeting was held at the Burgundy Lounge in Ridley Park, Pennsylvania, between the federal agents and Thomas and Charles for the alleged purpose of negotiating an arrangement whereby the agents would supply Charles with the chemicals necessary to the manufacture of methamphetamine; Charles would arrange for the manufacture of the methamphetamine, and Charles would then give to the federal agents a quantity of the methamphetamine which had been manufactured. A part of the understanding of the conspiracy was that Charles would first arrange for the manufacture of phencyclidine and then, with the proceeds obtained from the sale of that substance, would manufacture the methamphetamine. At this meeting, Charles gave the agents a piece of paper containing a list of various chemicals. On April 6, 1977, Charles and Thomas again met with the agents at the Burgundy Lounge, at which time Grayson was introduced to the agents by the McKnights. At this meeting, Grayson gave the agents a white card upon which he had written the names of chemical substances. Grayson, either at this meeting or shortly before this meeting, also added names of chemicals to the list of chemicals previously given to the agents by Charles. Between April 6 and 20, 1977, there were further contacts between the agents and the defendants concerning the production by the agents of the necessary chemicals and the manufacture by the defendants of the chemical substances. Two of these contacts were telephone conversations which were taped by the federal agents and subsequently played for the jury at the trial. On April 21, 1977, Charles met two of the federal agents at the McDade Mall and received from them receptacles containing chemicals known as piperdrine, magnesium metal and bromobenzene. Shortly thereafter, but prior to the receipt by the agents of any manufactured substances, the defendants were arrested.

In his defense, Charles testified that he had suspected that the "friends" his brother Thomas was meeting with were undercover agents; that Thomas had failed to heed Charles' repeated warnings that the "friends" were undercover agents; and that he had agreed to meet with the agents for the purpose of exposing the agents' covert operations to Thomas. Charles also testified that, rather than giving the agents a list of the components necessary for the manufacture of phencyclidine or methamphetamine, he had in fact given them a list of the components of a drug called "DNT." Charles also testified that he had performed the above activities with the belief that they would either lead to the exposure of the "friends" as federal agents or that, by participating in these activities, the federal agents would have broken the law and would, therefore, be unable to arrest anyone else for the same violation. Charles also admitted to receiving chemicals from the agents at McDade Mall but said he had immediately thrown the chemicals in the river.

Grayson also took the stand in his own defense and corroborated Charles' testimony. Grayson also testified that the names of chemicals which he had added to Charles' list were the generic names for phencycli-

dine and methamphetamine and not names of chemical components necessary for the manufacture of those drugs.

On rebuttal, the Government introduced evidence that Charles had not in fact thrown the chemicals received at the McDade Mall in the river, as he had testified.

■ In ruling upon Charles' and Grayson's motions for judgment of acquittal, we must determine whether the evidence, when viewed in a light most favorable to the Government, was such that a jury could have found beyond a reasonable doubt that the defendants were guilty as charged. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Miah, supra*, 433 F.Supp. at 264; *United States v. Phifer*, 400 F.Supp. 719, 724 (E.D.Pa.1974), *aff'd mem.*, 532 F.2d 748 (3d Cir. 1976). Evidence which is sufficient to support a conviction need not be direct, but such conviction may be supported by circumstantial evidence. *United States v. Miah, supra*, 433 F.Supp. at 264. In general, and as applied to this case, to support a conviction for a violation of 21 U.S.C. § 846, the Government must produce sufficient evidence that Charles and Grayson: (1) willfully formed and participated in the conspiracy at about the time alleged in the indictment; (2) willfully became a member of the conspiracy; (3) one or the other knowingly committed at least one of the overt acts charged in the indictment, at or about the time and place alleged; and (4) such overt act was knowingly done in furtherance of some object or purpose of the conspiracy, as charged in the indictment. *United States v. Thompson*, 533 F.2d 1006, 1009 (6th Cir. 1976), *cert. denied*, 429 U.S. 939, 97 S.Ct. 353, 50 L.Ed.2d 308 (1976) (citations omitted). The defendants do not deny that they willfully became a member of the conspiracy, nor do they deny that one or the other of them knowingly committed at least one of the overt acts charged in the indictment at or about the time and place alleged, nor that such overt act was know-

ingly done in furtherance of some object or purpose of the conspiracy. Therefore, the only issue before the Court is whether or not the defendants possessed the requisite intent to conspire to violate 21 U.S.C. § 841(a)(1).

■ Charles and Grayson set forth alternative arguments that there was insufficient evidence produced by the Government that they possessed the requisite intent to violate 21 U.S.C. § 841(a)(1). Their first argument is that they cannot be held to have possessed the intention to manufacture methamphetamine, as charged in the indictment, where the Government failed to produce evidence of the actual elements necessary for the manufacture of methamphetamine and where evidence was produced at trial that the chemicals requested by the defendants of the agents could not in fact be used to produce methamphetamine. The well settled answer to this argument is that it is not necessary that the evidence produced by the Government in support of a conviction based upon 21 U.S.C. § 846 show that the defendants were successful in accomplishing the object of the conspiracy nor that they possessed the ingredients necessary to the successful completion of the object of the conspiracy. *United States v. Rabinowich*, 238 U.S. 78, 85–86, 35 S.Ct. 682, 59 L.Ed. 1211 (1915); *United States v. Rueter*, 536 F.2d 296, 298 (9th Cir. 1976); *United States v. Meyers*, 529 F.2d 1033, 1037 (7th Cir. 1976). The essence of the crime of conspiracy is the *agreement* to commit the object of the conspiracy, not the completion of the substantive crime which is the object of the conspiracy. The crime is complete once the agreement is made. *United States v. Rueter, supra*, 536 F.2d at 298; *United States v. Garramone*, 380 F.Supp. 590, 592 (E.D.Pa.), *aff'd mem.*, 506 F.2d 1050 (3d Cir. 1974), *cert. denied*, 420 U.S. 992, 95 S.Ct. 1428, 43 L.Ed.2d 673 (1975). We find that the Government produced sufficient evidence by which the jury could have concluded, beyond a reasonable doubt, that Charles and Grayson agreed or

**540**

conspired to manufacture methamphetamine, in violation of 21 U.S.C. § 841(a)(1).

The second argument set forth by Charles and Grayson is that the evidence failed to show that they possessed the requisite intent to support a conviction based upon 18 U.S.C. § 846. The Government produced evidence at trial that Charles and Grayson met with federal agents and discussed the manufacture of illegal substances, that they gave the agents lists of chemicals and that Charles actually received chemicals from the agents. The defendants each took the stand in his own defense and testified to the intent behind his actions. We find that the Government produced sufficient evidence, both direct and circumstantial, by which the jury could have concluded beyond a reasonable doubt that the defendants intended to conspire to violate 21 U.S.C. § 841(a)(1). The credibility of the witnesses and the determination of whether or not the defendants did indeed possess the requisite intent were, therefore, questions of fact for the jury. *United States v. Thompson, supra,* 533 F.2d at 1009. These issues are foreclosed by the jury's verdict of guilty against each of the defendants. *Glasser v. United States, supra,* 315 U.S. at 80, 62 S.Ct. 457; *United States v. Miah, supra,* 433 F.Supp. at 264.

We hold, therefore, that Charles' and Grayson's motions for judgment of acquittal, pursuant to Fed.R.Crim.P. 29(c), should be denied.

An Order in support of this Memorandum Opinion was filed by the Court on October 7, 1977.