[No. 30267-1-I.   Division One.   March 6, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. FLOYD EARL HALLEY, *Appellant*.

*Corrie Johnson Yackulic* and *Schroeter Goldmark & Bender,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Amy Jean Freedheim, Deputy,* for respondent.

AGID, J. — Floyd Earl Halley appeals his conviction for delivery of cocaine on the grounds that the trial court erred in admitting (1) out-of-court statements made by another participant in the drug transaction,[1] (2) photocopies of buy money used in the transaction and (3) evidence of a cellular phone and pager found in Halley's car after his arrest. We affirm.

## FACTS

Halley was arrested in conjunction with a buy/bust operation conducted by the Auburn Police Department. The transaction was arranged by Dennis Schafer, a confidential informant participating in the transaction to work off possible drug charges against him. Schafer called Wayne Johnson, an acquaintance, and arranged to buy an ounce of cocaine for $1,800. They agreed that Schafer would take the money to Johnson's home, Johnson would call his supplier to obtain the drugs, and Schafer would then go outside and wait until Johnson waved him over.

Detective Sergeant James Kelly gave Detective Scott Barnett $1,800 from the Auburn police buy fund to purchase the cocaine. Either Kelly or Barnett made photocopies of the money to record the serial numbers of the bills.[2] Barnett and Schafer drove to Johnson's home. Johnson came out of his apartment and got into the car. He told Schafer and Barnett that he had called "his guy" who would be there in a few

---

[1]We discuss only this first issue in the published portion of our opinion.

[2]At trial, neither could remember who had actually made the photocopies, although both testified that they were made prior to the transaction.

minutes. Johnson and Schafer then went into Johnson's apartment and Schafer gave Johnson the money. While Schafer was in the apartment, Johnson placed one phone call and received one phone call. After receiving the phone call, Johnson told Schafer "it sounds like a go" and that it would be about 20 minutes before the cocaine arrived. Johnson told Schafer to go wait in the car and that he would come out and wave him over when he had the cocaine. Schafer left the apartment and waited in the car with Barnett. While they were waiting, Halley drove up to the building and went into Johnson's apartment. Two or three minutes later, Johnson came out of the apartment alone, got into Halley's car and ducked down. Johnson returned to the apartment and, shortly after, Halley came out and drove away. Johnson came out of his apartment again, motioned for Schafer to come over to him and handed Schafer an ounce of cocaine in a plastic bag.

Detectives Jack Pennington and Greg McPherson followed Halley, stopped his car and arrested him. The detectives searched the car and recovered over $2,000, a cellular phone and a pager. Detective Bill Sundqvist arrived on the scene with the photocopies of the money taken from the buy fund. He made a cursory inspection of the bills found in Halley's car and determined that some of them matched. Barnett and Kelly later compared all the money recovered from the car to the photocopies and placed checkmarks on the photocopied sheet next to the bills that matched. Of the $1,800, $1,550 was recovered.

Halley moved pretrial to exclude the statements Johnson made to Schafer about his supplier and to Schafer and Barnett about "his guy". The court ruled that the statements were admissible under ER 801(d)(2)(v) as statements by a coconspirator or, alternatively, under ER 804(b)(3) as statements against penal interest. At trial, Halley objected to admission of the photocopies of the buy money and a diagram summary of that exhibit. He also objected to admission of a photograph of the cellular phone[3] found in his car and to

---

[3]The State withdrew the actual phone and offered a photograph instead.

testimony about the phone number assigned to the phone.[4] Halley was found guilty as charged and he appeals his conviction.

## DISCUSSION

Under ER 801(d)(2)(v), a statement is not hearsay if it is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Before admitting statements under the rule, the trial court must make an independent determination that a conspiracy existed and that the defendant was a member of the conspiracy. *State v. Guloy*, 104 Wn.2d 412, 419-20, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986). Both must be shown by substantial evidence independent of the statements the State seeks to admit and established by a preponderance of the evidence.[5] *State v. St. Pierre*, 111 Wn.2d 105, 759 P.2d 383 (1988); *Guloy*, 104 Wn.2d at 420. The fact that some members of the conspiracy were police agents does not preclude a finding that a conspiracy existed. *State v. Atkinson*, 75 Wn. App. 515, 878 P.2d 505 (1994); *but see State v. Pacheco*, 125 Wn.2d 150, 159, 882 P.2d 183 (1994) (conspiracy cannot be found where only participants to agreement are defendant and a police agent).

Halley does not dispute that Johnson's statements were made in furtherance of a conspiracy. Rather, he contends that there was insufficient evidence to establish his participation in a conspiracy. Under Wharton's rule, on which Hal-

---

[4]Phone company records showed that three calls to Johnson's home were made on the same day as the transaction from the telephone with the number assigned to the cellular phone.

[5]The State argues that a defendant's connection with a conspiracy need only be established by "slight" evidence. Although there is language to this effect in *State v. Dictado*, 102 Wn.2d 277, 284, 687 P.2d 172 (1984), *Guloy*, which was decided after *Dictado*, clearly holds that the preponderance of the evidence standard is to be used in determining whether a defendant is a member of a conspiracy. 104 Wn.2d at 420. The State also suggests that the statement sought to be admitted can be considered in determining the existence of a conspiracy. This position is clearly not supported by Washington law. *See, e.g., Guloy; State v. Atkinson*, 75 Wn. App. 515, 878 P.2d 505 (1994); *State v. Pacheco*, 125 Wn.2d 150, 882 P.2d 183 (1994).

ley relies, a conspiracy to commit a crime that necessarily requires the participation of two people cannot exist unless a third party was involved in the agreement. *See State v. Langworthy*, 92 Wn.2d 148, 594 P.2d 908 (1979). The crime for which Halley was convicted, delivery of cocaine, is one which necessarily requires the participation of two people. He argues that although a conspiracy may have existed among Johnson, Schafer and Barnett, there was no evidence of a conspiracy among himself, Johnson and a third person because nothing tied him to any other party besides Johnson.

We reject Halley's argument on the ground that Wharton's rule does not apply to the preliminary determination under ER 801 of whether a conspiracy existed and whether the defendant participated in it. Wharton's rule, by its terms, applies to the substantive offense of conspiracy. *See Langworthy*, 92 Wn.2d at 151 ("when a substantive offense necessarily requires the participation of two persons, and where no more than two persons are alleged to have been involved in the agreement to commit the offense, the *charge of conspiracy* will not lie"). (Italics ours.) The original purpose of the rule was "to preserve the distinction between the crime of conspiracy and the substantive offense, and to avoid double jeopardy problems". *Langworthy*, 92 Wn.2d at 151. The modern application of the rule is as "a rule of construction which creates a presumption that, in the absence of an expression of legislative intent to the contrary, the potential charge of conspiracy is merged into the substantive offense." *Langworthy*, 92 Wn.2d at 151-52. Neither the potential for double jeopardy nor the doctrine of merger is implicated by the preliminary determination of the existence of a conspiracy under ER 801. Thus, we conclude that Wharton's rule is inapplicable in this context.[6]

---

[6]In other cases interpreting ER 801, our courts have treated the existence of a conspiracy under the rule as an independent inquiry from whether a conspiracy is either charged or proved. *See, e.g., Dictado*, 102 Wn.2d at 283-84 (availability of the coconspirator rule does not depend on whether a criminal conspiracy is charged).

We hold that, to admit a statement under ER 801, the State need establish no more than the basic dictionary definition of a conspiracy, "an agreement . . . made by two or more persons confederating to do an unlawful act", *Webster's Third New International Dictionary* 485 (1969), regardless of the crime charged. *See also* RCW 9A.28.040(1) (defining conspiracy as agreement with one or more persons). The trial court held that the State established a prima facie case based on the evidence that Halley showed up at a prearranged place and time, of Johnson's trip to the car and of the significant amount of police buy money found in the car. This is sufficient to establish by a preponderance of the evidence that there was a conspiracy between Halley and Johnson to deliver cocaine. Thus, the statements were properly admitted under ER 801.

The remainder of this opinion has no precedential value. Therefore, it will not be published but has been filed for public record. *See* RCW 2.06.040; CAR 14.

The conviction is affirmed.

WEBSTER and BECKER, JJ., concur.